IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| LEONARD WIMBERLY, JR., <br><br> Plaintiff, <br><br> v. <br><br> MARC HORNE; DALTON SANTIAGO; and JONATHAN DANIELS, <br><br> Defendants. | CIVIL ACTION NO.: 5:21-cv-25 |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. Doc. 26. Plaintiff filed a Response. Docs. 28. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## PROCEDURAL HISTORY

Plaintiff brought this 42 U.S.C. § 1983 action, alleging violations of his constitutional rights while incarcerated at Ware State Prison. Doc. 1 at 4–7. Plaintiff alleges on October 16, 2019, Defendants assaulted him, using excessive force in violation of his Eighth Amendment rights. Plaintiff also brought Eighth Amendment claims against Defendants Santiago and Daniels for failure to intervene and a deprivation-of-property claim against unknown prison officials under the Fourteenth Amendment. Id. After conducting frivolity review, the Court dismissed Plaintiff's Fourteenth Amendment claims and Plaintiff's claims against Defendants in their official capacities. Doc. 12. However, the Court permitted Plaintiff to proceed with his

excessive force claims against Defendants in their individual capacities and his failure-to-intervene claims against Defendants Santiago and Daniels in their individual capacities. Id. Plaintiff seeks declaratory relief, compensatory damages, and punitive damages. Doc. 1 at 5. Defendants now move for summary judgment. Doc. 26.

## UNDISPUTED MATERIAL FACTS

Defendants submitted a Statement of Material Fact ("SMF") in support of their Motion for Summary Judgment, in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1. Doc. 26-2. Defendants' SMF relies on: the declarations of Defendants Daniels, Horne, and Santiago; the declarations of Brad Hickox, Dr. Sharon Lewis, and Taral Todman; a Georgia Department of Corrections' Use of Force Assessment; photographs of Plaintiff's head and elbows; Plaintiff's medical records; and a video. Docs. 26-4 to 26-19.

Plaintiff filed a Response in Opposition to the Motion for Summary Judgment. Doc. 28. However, Plaintiff does not actually dispute most of the individual facts listed in Defendants' SMF. Most of Plaintiff's own factual allegations and his efforts to dispute Defendants' factual allegations are not supported by the record and, therefore, must be disregarded for the purpose of summary judgment. See Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (stating plaintiff's "conclusory assertions . . ., in the absence of supporting evidence, are insufficient to withstand summary judgment"); see also Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections). Plaintiff attached three pages of medical records related to his assignment to segregation. Doc. 28 at 2, 4, 5. But Plaintiff does not cite to these records in his Response or otherwise explain their relevance. Accordingly, the facts recited here represent the facts in the

2

record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party.  See Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

Plaintiff also contends he has "not been able to get declarations from witnesses and need[s] the help of this honorable Court to do so."  Doc. 28 at 3.  Plaintiff asserts he "requested video footage from the cameras on the walkway between G and H buildings from October 16, 2019 timeframe from 12:00 p.m.–12:30 p.m." and contends "video footage from cameras on walkway will show entire incident."  Id.  Plaintiff insists "all witnesses and video footage from cameras on walkway" will support his claims and factual disputes, especially testimony from "CERT member 'Bess,'" (presumably Officer Cameron Bess, who Defendants identify as the officer who videotaped part of the incident).[1]  Id.  However, discovery in this case closed on June 7, 2022.  Doc. 25.  Plaintiff has not brought any discovery issues before the Court, nor does he attempt to make a showing under Federal Rule of Civil Procedure 56(d) that he cannot present facts sufficient to justify his opposition to Defendant's Motion for Summary Judgment.  The Court acknowledges the challenges pro se litigants face, but such litigants are still required to conform to procedural rules.  United States v. Theodore, 780 F. App'x 769, 771 (11th Cir. 2019).  In light of these circumstances, and after reviewing the parties' submissions, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment:

---

[1] Plaintiff also makes new allegations against "Nurse Sasha" and "CO II Harris" about an incident on July 6, 2021.  Doc. 28 at 5.  However, Plaintiff did not make these claims in his Complaint, and he may not amend his Complaint here in response to a motion for summary judgment.  Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[A] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment" as "the proper procedure for plaintiffs to assert a new claim" at the summary judgment stage "is to amend the complaint in accordance with [Rule 15(a)].").

On October 16, 2019, Plaintiff was incarcerated at Ware State Prison as a convicted state prisoner, and Defendants Santiago, Horne, and Daniels were employed there as correctional officers.  Doc. 1 at 4; Doc. 26-2.  Plaintiff was in the sally-port of the F-1 dormitory and asked Defendant Santiago to check on his commissary items.  Doc. 26-2 at 1–2.  Defendant Santiago left the F-1 dormitory for a moment.  Id. at 2.  When Santiago returned, he saw Plaintiff was outside of the F-1 dormitory on the sidewalk between buildings.  Id.  Defendant Santiago gave Plaintiff four or five orders to return to the F-1 dormitory.  Id.  Plaintiff ignored Defendant Santiago's orders.  Id.  Instead, Plaintiff walked away from the F-1 dormitory and toward Defendant Santiago.  Id.  Defendant Santiago interpreted Plaintiff's behavior as an attempt to intimidate him.  Id.  Defendant Santiago called Defendants Horne and Daniels on his radio to assist him with getting Plaintiff to return to the F-1 dormitory.  Id.

Defendants Horne and Daniels were working in H-Building when they received the call for assistance from Defendant Santiago around 12:10 p.m.  Id.  Defendants Horne and Daniels arrived almost immediately.  Id.  When they arrived, Plaintiff was walking toward the H- dormitory.  Id.  Defendant Horne and Daniels gave Plaintiff several direct orders to return to his dormitory.  Id. at 3.  Plaintiff stated, "fuck off," "I'm not leaving without my store," and "if you come near me you gonna regret it."  Id.

Plaintiff lunged at Defendant Horne.  Id.  This prompted Defendants Horne and Daniels to push Plaintiff against a chain link fence.  Id.  Plaintiff grabbed Defendant Horne by the shirt.  Id.  Defendants Horne and Daniels responded by taking Plaintiff down to the concrete sidewalk to gain control over him.  Id.  Plaintiff was on the ground on his stomach but resisting Defendants Horne, Daniels, and Santiago's efforts to gain control over him.  Id.  Plaintiff had his hands and his feet under his body.  Id.  Plaintiff pulled his legs under his stomach to try and gain

4

leverage.  Id.  In response, Defendant Santiago reached under Plaintiff and pulled his legs out straight.  Id.  At the same time, Defendant Daniels placed both his hands on Plaintiff's shoulders and Defendant Horne placed both of his hands on Plaintiff's back in an attempt to gain control of Plaintiff's arms.  Id. at 4.

Sometime during this use of force, Defendant Santiago called a "10-78" on the radio, a code meaning "officer fighting with inmate and needs assistance."  Id.  About a minute later, other officers arrived and handcuffed Plaintiff.  Id.  Taral Todman, a Correctional Emergency Response Team ("CERT") Sergeant, heard the 10-78 call on the radio around 12:10 p.m.  Id. at 5.  Todman could see several officers attempting to control Plaintiff.  Id.  Todman and several other CERT officers went to the scene of the incident.  Id.  Upon arrival, Todman saw Plaintiff handcuffed and face down on the concrete.  Id.  Cameron Bess, a CERT officer, began videotaping the incident.

The CERT took Plaintiff to the medical unit for a use-of-force examination.  Id. at 4, 6.  A use-of-force examination is performed after officers use force on an inmate.  Id. at 6.  Two CERT officers picked Plaintiff up off the ground and escorted him to medical.  Id.  Plaintiff arrived at medical at approximately 12:20 p.m.  Id. at 7.  Brad Hickox, a registered nurse, performed the use-of-force examination.  Id.  Plaintiff complained he "was assaulted by Officer Horne" and "his hip hurt[]."  Id. at 7.  Hickox observed Plaintiff had superficial scalp and face abrasions, mild facial edema, and elbow abrasions.  Id. at 8.  Hickox also noted Plaintiff was alert, oriented, and responsive to verbal commands, had normal speech and gait, and was handcuffed behind his back.  Id.  Hickox informed Plaintiff how to treat the abrasions, told him to report any signs of infection, and to follow up with an advanced level provider.  Id.

Plaintiff saw a nurse practitioner for an orthopedic follow-up consult regarding his right knee and right hip on November 5, 2019.  Id. at 11.  Plaintiff complained he "hit his head about three weeks ago" and complained of mild headaches in the frontal scalp region.  Id.  The nurse practitioner assessed Plaintiff's orthopedic issues, diagnosed him with headaches, and prescribed Tylenol.  Id.  Plaintiff sought no further medical treatment for headaches or other issues related to the October 16, 2019 use-of-force incident after this November 5, 2019 consult.  Id.

## DISCUSSION

Defendants argue they are entitled to summary judgment on Plaintiff's claims because the undisputed material facts show Plaintiff is not entitled to compensatory damages, Defendants did not violate Plaintiff's Eighth Amendment rights, and they are entitled to qualified immunity.  Doc. 26-1 at 9–17.  For the reasons explained below, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.

**I.     Legal Standard**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson, 477 U.S. at 249 (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge, 630 F.3d at 1353.  As the Eleventh Circuit Court of Appeals has explained, "The facts at the summary judgment stage are not necessarily the true, historical facts or what a jury may ultimately find.  Instead, the facts at this stage are what a reasonable jury could find from the evidence . . . viewed in the light most favorable to the non-moving party."  Johnson v. City of Miami Beach, No. 20-10834, 2021 WL 5414410, at *1 (11th Cir. Nov. 19, 2021).

**II.     Defendants Are Entitled to Summary Judgment on Plaintiff's Claims**

Defendants argue Plaintiff's excessive force claim and failure-to-intervene claim fail on the merits.  Doc. 26-1 at 11–17.  That is, Defendants argue the undisputed material facts show they did not violate Plaintiff's Eighth Amendment rights.

7

### A. Legal Standard

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Subjectively, such "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'" Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) (quoting Skritch v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002)); Pearson v. Taylor, 665 F. App'x 858, 863 (11th Cir. 2016) ("The 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010))).

To analyze the subjective component, the Eleventh Circuit has "identified five factors to help evaluate whether force was applied maliciously or sadistically." Pearson, 665 F. App'x at 863; Burke, 653 F. App'x at 695. The factors are: (1) the need for the exercise of force; (2) the relationship between the need for force and the force applied; (3) the extent of injury the inmate suffered; (4) the extent of the threat to the safety of staff and other inmates; and (5) any efforts taken temper the severity of a forceful response. Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

8

Any action taken should be viewed considering the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson v. McMillian, 503 U.S. 1, 6 (1992); Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009). For example, an appropriate degree of force used to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

### B. Defendants' Use of Force Did Not Violate the Eighth Amendment

Defendants argue their use of force was necessary and proportional and Plaintiff suffered only minor injuries. Doc. 26-1 at 11–16. Plaintiff maintains no force was needed because he did not attempt to assault Defendants and did not resist their efforts to restrain him. Doc. 28 at 3. Further, Plaintiff maintains Defendants acted maliciously with the intent to harm him. Id.

#### 1. *The need for the application force.*

Plaintiff argues he "did not assault, attempt to assault, or resist while on the ground or before." Id. Plaintiff claims "to keep from being choked out by Horne," he "pushed Horne back" but did not attempt to assault him. Id. Defendants, on the other hand, argue force was necessary because Plaintiff "had refused numerous direct orders to return to his dorm, made threatening comments towards the Defendants, lunged at Officer Horne, and then continued to resist even after he was placed on the ground." Doc. 26-1 at 13.

Plaintiff does not dispute he refused to comply with multiple orders to return to his dormitory, he made threatening comments toward Defendants, or he lunged at Defendant Horne before Defendants used force against him. It is well-settled that where an inmate refuses orders,

9

prison officials' use of force is not inappropriate. The Eleventh has held where an inmate refuses to return to his cell, a prison official is justified in his use of some force. Brown, 813 F.2d at 1189–90; see also Alday v. Groover, No. CV 212-108, 2014 WL 1320093, at *6 (S.D. Ga. Mar. 31, 2014) (noting plaintiff failed to follow officer's lawful commands and an "official need not wait until disturbances are dangerous before using force to restore order") (citing Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)); Miles v. Jackson, 757 F. App'x 828, 830 (11th Cir. 2018) (finding a need for force where the inmate failed to comply with an officer's orders to go further into a cell and evaded attempts at compliance, although inmate was in handcuffs and leg restraints). There is no meaningful distinction between an inmate's refusal to return to his cell and Plaintiff's refusal to return to his dormitory. In both instances, there is a refusal to comply with prison officials' orders related to housing, ostensibly given to maintain order and safety within the prison.

> Plaintiff claims he did not resist Defendants' use of force, arguing,
>
> Although Plaintiff was not resisting on the ground in handcuffs behind the back with a C.O that's 6'2", at least 260 lbs., one knee on back of Plaintiff's neck and other knee in middle of Plaintiff's back while another Defendant that's 6'4" almost 300 lbs. sitting on Plaintiff's legs holding Plaintiff in place while Horne gave all he had attempting to cause harm and not gain control of a situation with his soft hands.

Doc. 23 at 3. As noted above, this assertion, found in Plaintiff's Response, lacks evidentiary support or citation to the record. On the other hand, Defendants' claim Plaintiff was resisting their efforts to control him is supported by the sworn declarations of all three Defendants. Doc. 26-2 at 3–4. The statements in Plaintiff's Response are largely repetitive of his Complaint. See, e.g., Doc. 1 at 6 ("Defendants Santiago and Daniels (who are both at least 6'3" and close to, if not 300 lbs. each) tackling me to the ground from different directions and placing me in handcuffs behind the back without resistance from me and Daniels placing one knee on the back

10

of my neck (imagine George Floyd) and one knee on my back . . . .") Neither Plaintiff's Complaint nor his Response is sworn or certified under the penalty of perjury, in accordance with 28 U.S.C. § 1746. The Court cannot consider such allegations in resolving a motion for summary judgment. See Chambliss v. Buckner, 804 F. Supp. 2d 1240, 1248 (M.D. Ala. 2011) ("Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered.") (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Therefore, the Court finds Defendants' use of force was in response to Plaintiff's refusal to follow orders and his resistance to Defendants' attempts to restrain him. Accordingly, there was some legitimate need for force based on Plaintiff's non-compliance with Defendants' orders, and this factor weighs in Defendants' favor.

### 2. *Relationship between the need for force and the force applied.*

The relationship between the need for force and the force applied also cuts in favor of Defendants. As explained above, Plaintiff's refusal to follow orders necessitated at least some use of force. Defendants Horne and Daniels pushed Plaintiff against a fence and took him down to the sidewalk. All three Defendants forced Plaintiff into handcuffs against his resistance. This was a reasonable amount of force to use given Plaintiff's threatening behavior, non-compliance, and resistance. Miles, 757 F. App'x at 830 (holding the use of a takedown is not disproportionate to the need to control an inmate who failed to obey orders); Sanks v. Williams, No. CV407-177, 2009 WL 1220621, at *2–4 (S.D. Ga. May 4, 2009), *aff'd*, 402 F. App'x 409 (11th Cir. 2010) (finding the officer's "use of his open hand to push away his aggressor employed only a minimal amount of force" where Plaintiff "stood from his chair and lunged toward" the officer). Consequently, this factor also cuts in favor of summary judgment for Defendants on Plaintiff's excessive force claim.

Plaintiff claims while he was on the ground in handcuffs, he was "brutally assaulted for 6 or 7 minutes . . . as Horne continuously punched and kicked Plaintiff . . . ." Doc. 28 at 5. Plaintiff provides no evidence or citation to the record in support of this claim. In their SMF, Defendants maintain, "At no time did Officer Horne kick or punch Wimberly in the face." Doc. 26-2 at 5. Also, "the entire incident from when [Defendants] Horne and Daniels joined [Plaintiff] and [Defendant] Santiago on the side-walk to the time the CERT team began escorting him to the WSP Medical Unit . . . took no more than several minutes." Id. at 4. These facts are supported by Defendants' declarations. Docs. 26-4 through 26-6.

Indeed, the use of force after a prisoner is handcuffed and no longer resisting constitutes excessive force. Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008). Here, what happened during the takedown is ultimately a question of one party's word against another's, but the Court must credit Defendants' claims made in their declarations, made under penalty of perjury, against Plaintiff's unsworn assertions in his Response. "A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); McCaskill v. Ray, 279 F. App'x 913, 914–15 (11th Cir. 2008) (citing Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980)) ("Unsworn statements, even from pro se parties, should not be 'consider[ed] in determining the propriety of summary judgment.'").

### 3. *The extent of Plaintiff's injuries.*

The extent of Plaintiff's injuries weighs in Defendants' favor. The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins v. Gaddy, 559 U.S. 34,

37 (2010)). While the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendants, not the severity of the injury that resulted to Plaintiff. Id. at 800–01 (citing Wilkins, 559 U.S. at 37 ). Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Here, there is no evidence Plaintiff suffered any more than minor injuries. Plaintiff suffered abrasions, soreness, and minor headaches treated by Tylenol. Doc. 26-2 at 7–11. In his Response, Plaintiff states he now seeks only punitive damages, not compensatory damages, and argues he "is not required by state or federal law to have been severely damaged (broken bones, lacerations, etc.) to receive punitive damages for the excessive force Defendants used . . . ." Doc. 28 at 3. Plaintiff is correct so far as federal law permits punitive damages absent a serious physical injury. See Hoever v. Marks, 993 F.3d 1353 (11th Cir. 2021); Wilkins, 559 U.S. at 38. However, the extent of his injuries is still relevant to the excessive force evaluation. Accordingly, this factor weighs in favor of Defendants.

### 4. *The extent of the threat to the safety of staff and other inmates.*

Plaintiff was refusing an order at the time force was used. A prisoner's refusal to comply with orders generally creates a threat to the safety of staff. Brockington v. Stanco, No. 5:14-cv-38, 2016 WL 4443204, at *5 (M.D. Ga. May 25, 2016) (citing Danley v. Allen, 540 F.3d 1298, 1308 (11th Cir. 2008), and McClendon v. Smith, No. 7:12-CV-154, 2014 WL 575538, at *6 (M.D. Ga. 2014)).

Plaintiff's non-compliance posed a threat to the safety of staff and inmates in several ways. First, the Defendants'—three prison guards—attention was diverted away from

maintaining security throughout the facility to forcing Plaintiff to comply with orders.  Second, a single prisoner's refusal to follow orders threatens to undermine officers' authority throughout a facility.  Id. at *6.  Finally, a prisoner's non-violent protestations can, potentially, escalate to physical resistance and officers are not required to wait for this escalation before using physical force.  Id.; Bennet v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (explaining a prison guard "need not wait until disturbances reach dangerous proportions before responding").  Therefore, Plaintiff's actions constituted a threat of safety of the staff and inmates, and this factor cuts in favor of Defendants.

### 5. *Any efforts taken to temper the severity of a forceful response.*

Defendants took steps to avoid using force.  Defendant Santiago ordered Plaintiff to return to his dormitory four or five times.  Defendants Horne and Daniels ordered Plaintiff to return to his dormitory several times.  At that point, Plaintiff, who was making threatening comments and who Defendant Santiago already believed was attempting to intimidate him, lunged at Defendants.  Only then did Defendants initiate the use of force.  Defendants promptly ensured Plaintiff received medical care, and this fact tempers the severity of the force used.  Cockrell, 510 F.3d at 1312.  Accordingly, this factor cuts in favor of Defendants.

In sum, when viewing the undisputed material fact in the light most favorable to Plaintiff, Defendants are entitled to summary judgment.  Every factor used to evaluate whether force was applied maliciously or sadistically cuts in favor of Defendants and against Plaintiff.  Because Plaintiff cannot satisfy the subjective component of an Eighth Amendment excessive force claim, summary judgment should be granted to Defendants.  See Scott v. Crosby, No. 3:19CV4746, 2021 WL 667002, at *4–5 (N.D. Fla. Feb. 3, 2021), *report and recommendation adopted,* 2021 WL 662299 (N.D. Fla. Feb. 19, 2021); Jennings v. Woodget, No. CV 20-00325,

2022 WL 2680298, at *6–8 (S.D. Ala. June 10, 2022), *report and recommendation adopted,* 2022 WL 2679439 (S.D. Ala. July 11, 2022); Moore v. Storey, No. 2:19-CV-1389, 2020 WL 8478152, at *5–7 (N.D. Ala. Oct. 19, 2020), *report and recommendation adopted,* 2021 WL 194991 (N.D. Ala. Jan. 20, 2021).

### C. Plaintiff's Failure to Intervene Claim Fails

Essential to any failure to intervene claim is the assumption excessive force was applied. See Velazquez v. City of Hialeah, 484 F.3d 1340, 1342 (11th Cir. 2007); Reid v. Neal, 688 F. App'x 613, 617 (11th Cir. 2017); King v. Reap, 269 F. App'x 857, 860 (11th Cir. 2008). Because the undisputed material facts fail to show any excessive force, Plaintiff's failure to intervene claim also fails. See, e.g., McBride v. Rivers, 170 F. App'x 648, 657 (11th Cir. 2006) (holding defendant could not be liable for failure to intervene when the underlying excessive force claim fails). Thus, no genuine issue of material fact exists as to the failure to intervene claim, and Defendant Harris is entitled to summary judgment.

In sum, the undisputed material facts show Defendants did not violate Plaintiff's Eighth Amendment rights through an excessive use of force or failure to intervene.[2] Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P.

---

[2] Defendants also seek summary judgment on Plaintiff's § 1983 claims on the grounds of the unavailability of compensatory damages under the Prison Litigation Reform Act ("PLRA") and qualified immunity. Doc. 26-1 at 9–11; 17. Because the Court concludes Defendants did not violate Plaintiff's Eighth Amendment rights through use of excessive force or failure to intervene, it is unnecessary to address these other arguments. See Barrera-Avila v. Watts, No. 2:16-cv-141, 2017 WL 933123, at *9 (S.D. Ga. Mar. 8, 2017) ("As these rulings would dispose of all of Plaintiff's claims, the Court need not address the remaining portions of Defendants' Motion."), *report and recommendation adopted*, 2017 WL 1240763 (S.D. Ga. Mar. 31, 2017).

24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cnty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DISMISS** Plaintiff's claims, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge

failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 6th day of February, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA